# EXHIBIT 1

Name: **OLGA I. WAESCHE & JOSEPH C. WAESCHE**

Mailing Address: **9750 E. SUPERSTITION DR.**

**PRESCOTT VALLEY, AZ 86314**

Daytime Telephone: **918-925-5068**

Representing Self, without a Lawyer

## IN THE SUPERIOR COURT OF ARIZONA, YAVAPAI COUNTY

Regarding the matter of

Olga I. Waesche and Joseph C. Waesche
**Plaintiff**

**P**    **202100025**
    **1300CV**

**vs.**

**SUMMONS**

Embry-Riddle Aeronautical University, In[c]
**Defendant**

---

> **WARNING:** **THIS IS AN OFFICIAL DOCUMENT FROM THE COURT THAT AFFECTS YOUR RIGHTS. READ THIS CAREFULLY. IF YOU DO NOT UNDERSTAND IT, CONTACT A LAWYER FOR HELP.**

---

FROM THE STATE OF ARIZONA TO: **EMBRY-RIDDLE AERONAUTICAL UNIVERSITY, INC.**

(Name of Defendant)

1. A lawsuit has been filed against you. A copy of the lawsuit and other court papers are served on you with this Summons.

2. If you do not want a judgment or order taken against you without your input, you must file an answer with the Court and pay the filing fee. If you do not answer, the other party may be given the relief requested in his or her Complaint. To file an answer, take or send the Answer to the **Clerk of the Superior Court, 120 S. Cortez, Prescott, AZ 86303, or Clerk of the Superior Court, 2840 N. Commonwealth Drive, Camp Verde, AZ 86322.** Mail a copy of your Answer to the other party, or the other party's attorney, at the address listed on the top of this Summons.

3. If this Summons and the other court papers were served on you by a registered process server or the Sheriff within the State of Arizona, you must answer within TWENTY (20) CALENDAR DAYS from the date you were served, not counting the day you were served. If this Summons and the other papers were served on you by a registered process server to the Sheriff outside the State of Arizona, you must answer within THIRTY (30) CALENDAR DAYS from the date you were served, not counting the day you were served. Service by a registered process server or the Sheriff is complete when made. Service by Publication is complete 30 days after date of the first publication.

   **NOTICE: If you signed a Waiver of Service of Summons, you must file your answer within 60 days from the date the Notice of Lawsuit and Request to Waive Service of Summons was sent to you.**

4. Copies of the court papers filed in this case are available from the Plaintiff at the address at the top of this Summons or from the Clerk of the Superior Court at the addresses listed in Paragraph 2 above.

SIGNED AND SEALED this date: _January 2, 2021_

DONNA McQUALITY, Clerk of the Superior Court

By: _____, Deputy Clerk

**REQUESTS FOR REASONABLE ACCOMMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE OFFICE OF THE JUDGE ASSIGNED TO THE CASE FIVE DAYS BEFORE ANY SCHEDULED COURT DATE.**

1   Joseph C. Waesche and Olga I. Waesche
    9750 E. Superstition Dr.
2   Prescott Valley, AZ 86314
    (928) 925-5068
3   joeartlaw@gmail.com
    Pro per
4

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2021 JAN 12 PM 1:55

DONNA McQUALITY, CLERK

**C. HANCE**

BY:_____

5            IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

6                 IN AND FOR THE COUNTY OF YAVAPAI

7

8   In re the Matter of:                    )
                                            )
9   OLGA I. WAESCHE and JOSEPH C. WAESCHE   )   P1300CV 202100025
    husband and wife.                       )
10                                          )   Case No.
                 Plaintiffs,                )
11                                          )   BREACH OF CONTRACT,
    vs.                                     )   BREACH OF IMPLIED
12                                          )   COVENANT OF GOOD FAITH
                                            )   AND FAIR DEALING, AND
13  EMBRY-RIDDLE AERONAUTICAL               )   NEGLIGENT INFLICTION OF
    UNIVERSITY, INC., a foreign corporation,)  EMOTIONAL DISTRESS
14  John Does I-X and Jane Does I-X and     )
    Corporations I-X.                       )
15                                          )
                 Defendants.                )
16                                          )
                                            )
17  _____)

18            Olga I. Waesche and Joseph C. Waesche, husband and wife, ("Waesche" or

19  "Plaintiffs") hereby file their complaint against Embry-Riddle Aeronautical University,Inc.

20  ("ERAU") for breach of contract, breach of an implied covenant of good faith and fair

21  dealing, and negligent infliction of emotional distress.

22                       **PARTIES, JURISDICTION AND VENUE**

23       1. Plaintiffs are adults and residents of Yavapai County, AZ.

24       2. ERAU is a foreign company with a Prescott campus doing business in Yavapai

25  County, AZ.

26       3. John Does I-X, Jane Does I-X and Corporations I-X are persons and companies

27  whose identities are currently unknown who may have committed acts with ERAU making

28  them liable for the subject matters of this action. Plaintiffs will seek to amend this complaint

1  when their identities are discovered.

2      4. This complaint arises from events that occurred in Yavapai County, AZ.

3      5. The amount in controversy exceeds this Court's minimal jurisdictional amount and

4  this Court has jurisdiction pursuant to A.R.S. § 122 and 123.

5      6. Venue is proper in this Court pursuant to A.R.S. §12-401(5).

6  **GENERAL ALLEGATIONS**

7      7. Plaintiff, Olga I. Waesche ("OLGA"), was hired by ERAU Prescott Campus

8  (ERAUPC),Prescott, AZ on August 22, 2016, as an Adjunct Professor, for the Fall 2016

9  Semester, in the Department of Humanities and Communication, College of Arts and Science

10  to teach the Russian language and humanities to ERAUPC students.

11      8. OLGA taught two Russian language courses (LRU 101 A and B), with a total of

12  37 students, and one Russian Humanities course, taught in English, (HU-145), with 16

13  students, during the ERAUPC Fall 2016 Semester.

14      9. An Adjunct Professor at ERAUPC could only teach nine (9) credit hours a

15  semester, had no full time contract, and received no benefits.

16      10. ERAUPC only taught Spanish, Arabic, and Chinese language courses prior to its

17  Fall 2016 Semester.

18      11. During ERAUPC's Spring 2017 Semester (January, 2017, to May, 2017); OLGA

19  taught two Russian language courses LRU 102 A and B to 35 students.

20      12. During ERAUPC's Fall 2017 Semester (August, 2017 - December, 2017)

21  there was an increase in the number of students requesting to take the Russian language

22  course. OLGA taught three Russian language courses LRU 101 and LRU 201 A and B to

23  a total of 66 students.

24      13. During ERAUPC's Spring 2018 Semester (January, 2018 - May, 2018)

25  OLGA taught three Russian language courses LRU 102 and LRU 202 A and B to a total of

26  60 students.

27      14. During ERAUPC's Fall 2018 Semester (August, 2018 - December 2018)

28  Tatiana Rivera was hired as an Adjunct Professor to teach one  Russian language course

- 2 -

LRU 101, and OLGA taught three Russian language courses, LRU 101, 201 and 395 (an upper level class) with a total of 78 students

15. During ERAUPC's Spring 2019 Semester (January, 2019 - May, 2019)Tatiana Rivera taught one Russian language course LRU 102, and OLGA taught three Russian language courses, LRU 102, 202 and 395, with a total of 65 students.

16. Effective July 1, 2019, the foreign language program formerly part of the ERAUPC's Department of Humanities and Communications was moved to the Department of Global Security and Intelligence Studies (DGSIS) that was part of the ERAUPC's College of Security and Intelligence.

17. During ERAUPC's Fall 2019 Semester (August, 2019 - December, 2019) Tatiana Rivera taught two Russian language courses, LRU 101 and 201, and OLGA taught three Russian language courses, LRU 101, 201, and 395 with a total of 78 students. OLGA also did a Directed Study Course, that she was not paid for, but the student paid ERAUPC.

18. Dr. Jon Haass ("Haass") was the Interim Dean of the DGSIS.

19. On or about September 4, 2019, Tatiana Rivera submitted a letter of resignation effective September 16, 2019.

20. On or about September 12, 2019, Haass, the Interim Dean of the DGSIS met with OLGA regarding her teaching all of the Russian Language classes after Tatiana Rivera departed.

21. Haass agreed to work to get OLGA a full time assistant professor position if she agreed to teach all of the Russian language classes.

22. On September 20, 2019, OLGA went to the ERAUPC Human Resources Office to sign a contact for a full time assistant professor position; but she was presented with only an full time Instructor, Russian language position.

23. On September 20, 2019, OLGA called Haass regarding not getting a full time assistant professor position as he had agreed. Haass came to meet with OLGA in the ERAUPC Human Resources Office.

24. On September 20, 2019, Haass, in front of the Human Resources Assistant, told

- 3 -

OLGA that he did not have time to obtain a full time assistant professor position for her but he would continue to work on obtaining that position for her.

25. On September 20, 2019, OLGA signed the Faculty Contract as a full time Instructor, Russian Language, in the College of Security and Intelligence, Prescott Campus, for the period September 16, 2019 through May, 15, 2020, at a salary of $50,000 for 8 months and the contract was subject to existing University policies. The Faculty Contract was signed by Dr. Anette M. Karlsson, Chancellor. A copy of the Faculty Contract is attached as Exhibit A.

26. As a full time instructor; OLGA was eligible to participate in the ERAU TIA 403b retirement program.

27. OLGA signed ERAU's retirement investment agreement with a contribution of $500.00 per pay period, which was twice a month, and ERAU agree to and made matching contribution of $279.41 a pay period to OLGA's retirement account.

28. ERAU made contributions to OLGA's social security account every pay period that contributed to her social security benefits when she qualifies for and receives social security payments.

29. On 13 November, 2019, the Faculty Speakers of ERAU signed the Faculty Policies and Procedures Handbook ("ERAU Handbook") and on 15 November, 2019, P. Barry Butler, University President signed the ERAU Handbook.

30. On February 7, 2020, Haass handed OLGA a letter from ERAU, dated January 21, 2020, that was in an opened envelope addressed to OLGA with her home address. The letter was signed by Brandon l. Young, Vice President and Chief Human Resources Officer, and referenced ERAU Faculty Handbook, dated 1/18/92, as authority (which did not exist because it was superseded by the 2019 ERAU Handbook).

31. The ERAU, January 21, 2020, letter given to OLGA stated that the University did not intend to renew her contract for the 2020-21 academic year.

32. On February 21, OLGA met with Haass to discuss the ERAU's intention not to renew her contract as required by Part III, Section 14.4 of the ERAU Handbook. Haass told

OLGA that he would try to help resole the non renewal problem, but nothing was done.

33.  On March 5, 2020, OLGA had an informal meeting with Dr. Sarah Nilsson, the ERAUPC Speaker, Dr. Kaela Martin, ERAUPC Vice Speaker, and Dr. Kathy Lustyk, Interim Chief Academic Officer regarding OLGA's grievance of ERAU's letter of intent not to renew her full time contract.

34.  Dr. Kathy Lustyk told OLGA that it was a Human Resources decision, that OLGA was not a faculty member, and she had no right to receive an evaluation, or to file a grievance pursuant to the ERAU Handbook ( in spite of the fact that OLGA had a signed full time Faculty Contract).

35.  Part I, Section 1.1, of the ERAU Handbook states that the Handbook sets forth all of the ERAU policies and procedures pertaining to the rights, responsibilities, duties, honors, and privileges of the Faculty of ERAU.

36. The ERAU Handbook does not state that it is not part of the Faculty contract.

37. Part I, Section 13.3 Non-renewal, of the ERAU Handbook states "The final decision not to renew an annual contract is made by the President; such a decision may not be improperly discriminatory, arbitrary, or capricious. In cases where a faculty member believes that the non-renewal of his or her contract has been improperly discriminatory, arbitrary, or capricious, the faculty member may commence a grievance in accordance with the established procedures of Grievance. The burden of proof shall be on the faculty member."

38.  Part I, Section 13.3 Non-renewal, of the ERAU Handbook also states: "The President shall act on a recommendation for non-renewal only after the annual performance evaluation process has been completed and after having received the recommendation from the Campus Chief Academic Officer."

39.  OLGA's annual performance evaluation was completed on February 25, 2020, which gave her an outstanding rating and with a recommendation to renew her contract.

40.  ERAU's January 21, 2020, Letter of non-renewal was in violation of Part I, Section 13.3 Non-renewal of the ERAU Handbook because the ERAU President did not have

OLGA's annual performance evaluation when someone made the decision not to renew OLGA's full time contract.

41. On March 15, 2020, OLGA emailed the ERAUPC Senate a Formal Grievance in accordance with Part III, Section 14.4 b of the ERAU Handbook.

42. On March 17, 2020, the Speaker, pursuant to Part III, Section 14.4 c of the ERAU Handbook, emailed the ERAU Senate to obtain a vote for a faculty grievance committee

43. The ERAU Senate unanimously agreed to the Faculty Grievance Committee.

44. On March 18, 2020, Dr. Sarah Nilsson, the ERAUPC Speaker, received an email from Mr. Charlie Sevastor, J.D., Vice President and General Counsel. Legal Department, ERAU, stating that the University cannot participate or provide any information to the committee concerning an HR decision affecting an employee and the work on consideration of OLGA's concern by the Committee needs to stop. Mr. Sevastor's email to Dr. Nilsson also stated that OLGA must be referred to HR if she would like to address this matter further.

45. On March 21, 2020, OLGA sent a letter to Mr. Charlie Sevastor J.D. requesting on what authority he had to stop her grievance process.

46. On March 25, 2020, Mr. Charlie Sevastor J.D. sent Dr. Sarah Nilsson another e-mail stating that he now knew that OLGA's grievance was based on the complaint that the non-renewal decision was "improperly discriminatory, arbitrary, or capricious" (even though this information was in OLGA's Grievance, dated March 15, 2020) which is a basis for a grievance committee review in 13.3 of the Faculty Handbook, so please proceed with the committee process. Mr. Sevastor's email also stated "As I mentioned below the university cannot participate or provide any information to the committee concerning an HR decision, but will review the findings of the committee."

47. On March 25, 2020, Dr. Nilsson relayed the information in Mr. Sevastor's email to the faculty grievance committee.

48. Since the ERAUPC grievance committee was unable to obtain any information from the University, it made a mediation in accordance with Section 14.4d of the ERAU Handbook, impossible.

49. On April 1, 2020, the Senate appointed Faculty Grievance Committee met and decided to ask OLGA to provide any additional information that she had to support her grievance.  OLGA immediately responded with additional information that supported her grievance.

50.  On April 3, 2020, the Faculty Grievance Committee decided there was no grievance. The Faculty Grievance Committee found:  Despite the HR letter of non-renewal being sent prior to the evaluation, this was not the reason for discrimination because the decision for non-renewal was not based on the evaluation as the University had not as yet seen it.

51.  On April 7, 2020, the Faculty Grievance Committee sent its finding to Mr. Charles Sevastos and Dr. Karlsson.  Dr. Sara Nilsson thought she had sent the findings to OLGA but she had not and finally sent the finding to OGLA on April 14, 2020.

52. On April 16, 2020,  OLGA did not accept the Senate's Grievance Committee's findings and requested a Formal Grievance Committee pursuant to Part III, Section 14.4 f of the ERAU Handbook that authorized her to name two members of a Formal Grievance Committee.

53.  On April 20, 2020, the Formal Grievance Committee, pursuant to Part III, Section 14.4 f, ERAU Handbook, was formed.

54. On 2 May 2020, the Formal Grievance Committee completed its Findings of Fact, Conclusions and Recommended Disposition, Formal Grievance Committee Report: Olga Waesche. (A copy of the Formal Grievance Committee report is attached as Exhibit B).

55. The Formal Grievance Committee made the recommendations: 1. "The Committee believes that there were blatant and sufficient violations of procedure that were arbitrary, discriminatory, **and** capricious, that it supports the Chancellor if she elects to change the recommendation and render the letter of non-renewal dated 21 Jan 2020, null and void, thereby extending Olga Waesche's full-time faculty status for AY 2020-2021."

56.  The Formal Grievance Committee made the following Findings of Facts:

1. **ERAU did not follow Handbook policy Par I, Section 13.3, Paragraph I.**

Multiple witnesses have indicated that when approached with the question regarding the grievant's non-renewal, the President of the University, Dr. Barry Butler, was unaware of such deliberations.

**2. ERAU did not follow Handbook policy Part I, Section 13.3, Paragraph I**

The irrefutable evidence very clearly demonstrated that, in the grievant's case, the decision for non-renewal was made arbitrarily and capriciously.

In addition, the committee has discovered that, in the case of the grievant's non-renewal, discriminatory conduct based on gender and national origin took place, violating APPM 8.3.1.2 "All aspects of employment within the University will be governed on the basis of merit, competence, and qualifications, and will not be influenced in any manner by race, creed, color, religion, gender, age, national origin, disability, protected veteran status, genetic information, sexual orientation, gender identity, or other status protected by federal, state, or local law."

**3. ERAU did not follow Handbook policy Part I, Section13.3, Paragraph 2.**

**4. As per Handbook policy Part I, Section 13.3, Paragraph 4, the preceding paragraphs are in full effect.**

**5. ERAU did not follow Handbook policy Part I, Section 3.1, Paragraph 3 in defining her status as a full-time instructor at the time of her non-renewal.**

**6. ERAU did not follow APPM policy 8.2.9, Staffing Policy**

**7. ERAU did not follow APPM policy 8.2.10, Reduction in Force Policy**

**8. ERAU did not follow Handbook policy Part I, Section 14 related to the Faculty Grievance Process**

57. The Formal Grievance Committee's Conclusion stated:

The Committee in this matter firmly believes that Olga Waesche provided abundant, clear, and irrefutable evidence that multiple violations of the ERAU Handbook Policies and Procedures occurred with regards to her contract non-renewal.

58. The Formal Grievance Committee's Conclusion also stated:

In addition to the specific instances of documented Handbook and APPM violations described above, the Committee received compelling evidence of numerous breaches of ethical and professional conduct in the inequitable treatment of the grievant, as it pertains to the non-renewal of her contract. These violations include discrimination on the basis of

gender and national origin, failure to recognize her full-time non-tenure track faculty status, among others, causing her irreparable damage to both her reputation at the university, as well as her professional career.

59. The Formal Grievance Committee's Report was submitted to Dr. Anette Karlsson, ERAUPC Chancellor, but she declined to take any action to change the University's letter of non-renewal of OLGA's full time contract.

60. On May 21, 2020, OLGA filed an Employment Charge of Discrimination with the Arizona Attorney General's Office, Civil Rights Division and EEOC that is investigating OLGA's charge. OLGA will file to amend her complaint upon receiving the results of the Arizona Attorney General's Office, Civil Rights Division and EEOC investigation and receiving a right to sue.

61. OLGA has made all reasonable efforts to find another comparable employment without success and has suffered from emotional distress from the non-renewal of her contract with ERAU.

## COUNT ONE
## BREACH OF CONTRACT

62. Plaintiffs hereby alleges the allegations set forth in the preceding paragraphs, as though fully set forth herein and incorporates the same by this reference.

63. On September 20, 2019, OLGA was given a Faculty Contract, Full-time, Non-Tenure as an Instructor, Russian Language for the period from September 16, 2019, through May 15, 2020, that was subject to ERAU'S 2019 Handbook's policies and procedures.

64. On 13 November, 2019, the Faculty Speakers of ERAU signed the Faculty Policies and Procedures Handbook ("ERAU Handbook") and on 15 November, 2019, P. Barry Butler, University President signed the ERAU Handbook.

65. On February 7, 2020, Haass handed OLGA a letter from ERAU, dated January 21, 2020, that was in an opened envelope addressed to OLGA with her home address. The letter was signed by Brandon l. Young, Vice President and Chief Human Resources Officer, and referenced as authority ERAU Faculty Handbook, dated 1/18/92. (Which did not exist because it was superseded by the 2019 ERAU Handbook .

- 9 -

66. The ERAU, January 21, 2020, letter to OLGA stated that the University did not intend to renew her contract for the 2020-21 academic year.

67. Part I, Section 13.3 Non-renewal, of the ERAU Handbook states: "The President shall act on a recommendation for non-renewal only after the annual performance evaluation process has been completed and after having received the recommendation from the Campus Chief Academic Officer."

68. OLGA's annual performance evaluation was completed on February 25, 2020, which gave her an outstanding rating and with a recommendation to renew her contract.

69. ERAU's January 21, 2020, Letter of non-renewal was in violation of Part I, Section 13.3 Non-renewal of the ERAU Handbook because the ERAU President did not have OLGA's annual performance evaluation when the decision not to renew OLGA's full time contract was made.

70. ERAU breached its contract with OLGA by failing to comply with the procedures of the ERAU Handbook and its breach was improperly discriminatory, arbitrary, or capricious.

71. OLGA'S informal efforts to resolve ERAU's breach of her employment contract as set forth in the ERAU Handbook were without success and she filed a Formal Grievance.

72. The ERAUPC Senate Grievance Committee  Senate, with members selected by the Senate, found their was no grievance because the non-renewal decision was not based on OLGA's performance evaluation which the ERAU president did not have.  But the ERAU President should have had OLGA'S performance evaluation before making any non-renewal decision as required by the ERAU Handbook.

73. OLGA requested a Formal Grievance Committee to investigate her grievance because she had the right to select two impartial members of the five member committee.

74. The Formal Grievance Committee found that ERAU had failed to comply with several ERAU Handbook policies and procedures and recommended that OLGA's contract be renewed.

75. ERAU refused to follow the recommendations of the Formal Grievance

- 10 -

Committee and has breached its contract with OLGA.

76.  OLGA has been damaged by the loss of back pay, contributions to her TIA 403b Retirement Program, the loss of contributions to her social security account and other damages in an amount to be proven at trial.

## COUNT TWO

### Breach of Implied Covenant of Good Faith and Fair Dealing

77.  Plaintiffs hereby allege the allegations set forth in the preceding paragraphs as though fully set forth herein and incorporates the same herein by reference.

78. An implied covenant of good faith and fair dealing is part of the Faculty Contract between ERAU and OLGA.

79.  ERAU breached the implied covenant of good faith and fair dealing by the following: (1) Dr. Joh Haass failing to obtain the assistant professor position he promised OLGA to teach all the Russian language courses when Tatiana Rivera resigned, (2) Brandon I. Young, Vice President and Chief Human Resources Officer sending OLGA a notice of the University's intent not to renew her contract without having OLGA's performance evaluation and siting as authority a superseded ERAU Handbook, (3) Dr. Kathy Lustyk, interim Chief Academic Officer telling OLGA that she was not a faculty member and didn't have any right to file a grievance, (4) Mr. Charlie Sevastor, J.D., Vice President and General Counsel writing to Dr. Sarah Nilsson stopping the forming of the Grievance Committee; until OLGA wrote him a letter requesting his authority for stopping the grievance committee, causing him to admit that OLGA had a right to file a grievance, (5) the Senate Grievance Committee finding no grievance because of the ridiculous reason the ERAU President didn't have OLGA's performance evaluation and the decision not to renew OLGA's contract was not based on her evaluation, and (6)  Dr. Anette Karlsson, ERAUPC Chancellor's, failure to do nothing to correct the breach of contract after receiving the Formal Grievance Committee's Report that clearly found that ERAU had failed to comply with several ERAU Handbook policies and procedures, and  the recommendation that OLGA's full-term Faculty Contract should be renewed.

80.  ERAU's breach of the covenant of good faith and fair dealing caused OLGA damages and was with malice or reckless indifference that warrant punitive damages.

## COUNT THREE

### Negligent Infliction of Emotional Distress

81.  Plaintiffs hereby allege the allegations set forth in the preceding paragraphs as though fully set forth herein and incorporates the same herein by reference.

82.  The conduct of Defendant by its officials and administrators as stated above unintentionally caused OLGA emotional distress.

83.  Defendant by its officials and administrators should have known that their conduct involved an unreasonable risk of causing OLGA emotional distress.

84.  As a result, Defendant is liable for the actions of its officials and administrators for the tort of negligent infliction of emotional distress and the damages incurred therefrom.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment against Defendant as follows:

a.  For  OLGA's back pay and benefits through the present in an amount to be proven at trial;

b.  For liquidated damages in an amount equal to Plaintiff's actual damages, in an amount to be proven at trail;

c.  For exemplary damages in an amount to be proven at trial;

d.  For such other damages as may be permitted by law;

e.  For cost and attorneys' fees if Plaintiff's have to retain an attorney;

f.  For prejudgment and post judgement interest;

g.  For such other and further relief as may be requested or deemed fair and equitable by the Court.

Dated this 11th day of January, 2021.

_Olga I. Waesche_                    _Joseph Waesche_
Olga I. Waesche                      Joseph C. Waesche

**EMBRY-RIDDLE**
Aeronautical University
PRESCOTT, ARIZONA

Anette M. Karlsson Ph.D.
karlssom@erau.edu
Chancellor

Tel: 928-777-3800
URL:prescott.erau.edu

## FACULTY CONTRACT

| | |
|---|---|
| **FACULTY MEMBER:** | Olga Waesche |
| **STATUS:** | Full-time          **TYPE:** Non-Tenure Track |
| **POSITION:** | Instructor, Russian Language |
| **COLLEGE AND CAMPUS:** | College of Security and Intelligence , Prescott Campus |
| **PERIOD:** | September 16, 2019 through May 15, 2020 |
| **SALARY:** | $50,000 for 8 months |
| **WORKLOAD:** | To be assigned by your Department Chair (Reference Part III, Section 6.4, of the Faculty Handbook). |
| **UNIVERSITY POLICIES:** | This contract is subject to existing University policies. |
| **PROVISIONS:** | |

_____
Dr. Anette M. Karlsson,  Chancellor    Date

Olga L Waesche  09/20/2019
Olga Waesche                        Date

3700 Willow Creek Road
Prescott, AZ 86301-3720
800-888-ERAU (3728)

1 May 2020

# Findings of Fact, Conclusions, and Recommended Disposition Formal Grievance Committee Report: Olga Waesche

**The contents of this report are to remain confidential and privileged. This report is being submitted by the Formal Grievance Committee based on this understanding.**

**Olga Waesche** is a full-time non-tenure track instructor of Russian Language in the College of Security and Intelligence at Embry-Riddle Aeronautical University (ERAU). On 21 Jan 2020, Olga Waesche (hereafter referred to as the "**grievant**") received a notice of non-renewal for her full-time faculty contract for AY 2020-2021. Per Part III, Section 14 of the ERAU Faculty Handbook, the grievant followed procedures to file a grievance with the Faculty Senate, alleging that *the non-renewal of her contract has been improperly discriminatory, arbitrary, or capricious.*

The **Formal Grievance Committee** (hereafter referred to as the "**Committee**") that assembled for hearing of the grievance consisted of:

- **Dr. Akhan Almagambetov** (Chair): Assistant Prof., Electrical Eng. (CESE/COE)
- **Dr. Murray Henner**: Professor, Global Studies (GSIS/CSI)
- **Dr. David Lanning**: Prof. and Associate Chair, Aerospace Engineering (AE/COE)
- ~~**Prof. Jennah Perry:** Associate Professor, Air Traffic Management (AAS/COA)~~
- ~~**Prof. Gregory Reverdiau:** Instructor, Aeronautical Science (AS/COA)~~

The Committee received documentation related to the grievance from **Sarah Nilsson** (Speaker of the Senate) on 20 Apr 2020. Additional documentation related to the grievance was submitted by the grievant on 27 Apr 2020, after an inquiry by the committee.

## Recommendations

After thoroughly reviewing University policies and procedures, such as those contained in APPM and the Faculty Handbook (hereafter referred to as the "**Handbook**"), and conducting individual interviews with multiple witnesses, which were identified by the committee, **the Committee makes the following recommendations:**

1. **Review Olga Waesche's non-renewal decision.** The Committee believes that there were blatant and sufficient violations of procedure that were arbitrary, discriminatory, **and** capricious, that it supports the Chancellor if she elects to change the recommendation and render the letter of non-renewal dated 21 Jan 2020 null and void, thereby extending Olga Waesche's full-time faculty status for AY 2020-2021.

2. **Charge the Prescott Faculty Senate to work with HR to completely overhaul the wording of the Faculty Handbook, as well as the related entries in the Administrative Policies and Procedures Manual (APPM),** which are currently in conflict with each other. We believe that this step will not only protect other faculty from such occurrences, but also protect the University from further grievances and potential litigation.

[ CONFIDENTIAL ]   **Formal Grievance Committee Report:** Olga Waesche

*If the revisions cannot be completed in a timely manner, the Committee recommends a hold on the use of the APPM for faculty non-renewal and termination decisions, pending satisfactory resolution. In the interim, the Committee recommends that the most current version of the Faculty Handbook supersede the conflicting statements found in the APPM.*

3. **Charge the Prescott Faculty Senate with finding and revising appropriate sections of the Faculty Handbook,** which contain conflicting statements. In particular, statements related to faculty full-time status at the University, in Part I, Sections 3.1 and 3.2 of the Faculty Handbook.

4. **The Committee recommends that the University Administration explore the prospect of retaining an outside consulting firm with legal background,** in order to assist the Faculty Senate with the revisions and drafting of the appropriate sections of the Handbook related to personnel decisions.

## Findings of Fact

Upon review of policies, witness statements, and documentation provided by the grievant, the Committee finds the following:

1. **ERAU did not follow Handbook policy Part I, Section 13.3, Paragraph 1,** "The final decision not to renew an annual contract is made by the President".

   The letter of non-renewal from 21 Jan 2020 was signed by Brandon Young, VP and Chief Human Resources Officer. Multiple witnesses have indicated that when approached with the question regarding the grievant's non-renewal, the President of the University, Dr. Barry Butler, was unaware of such deliberations.

2. **ERAU did not follow Handbook policy Part I, Section 13.3, Paragraph 1,** "such a [non-renewal] decision may not be improperly discriminatory, arbitrary, or capricious".

   Documentation provided by the grievant, which included emails, letters from the Administration, contracts, and letters of non-renewal, as well as additional documentation and irrefutable evidence provided by multiple witnesses at the hearing, clearly showed that the non-renewal decision was not verifiably based on enrollment figures and professional and academic record, per the Handbook. The irrefutable evidence very clearly demonstrated that, in the grievant's case, the decision for non-renewal was made arbitrarily and capriciously.

   In addition, the committee has discovered that, in the case of the grievant's non-renewal, discriminatory conduct based on gender and national origin took place, violating APPM 8.3.1.2: "All aspects of employment within the University will be governed on the basis of merit, competence, and qualifications, and will not be influenced in any manner by race, creed, color, religion, gender, age, national origin, disability, protected veteran status, genetic information, sexual orientation, gender identity, or any other status protected by federal, state or local law."

3. **ERAU did not follow Handbook policy Part I, Section 13.3, Paragraph 2,** "The President shall act on a recommendation for non-renewal only after the annual performance evaluation process has been completed and after having received the recommendation from the Campus Chief Academic Officer."

The letter of non-renewal was issued on 21 Jan 2020. The annual performance evaluation of the grievant, however, was only completed on 26 Feb 2020 by her acting department chair at the time, indicating that neither the President of the University, nor the acting CAO at the time were in possession of the annual performance evaluation of the grievant.

When the acting CAO (at the time of non-renewal) was pressed for a statement to the committee, she responded with the following:

> "The matter you are referring to is a confidential HR matter and as such, I won't be providing a statement to the committee."

The University Administration would not disclose to us any information regarding the grievant's non-renewal, according to an email from Charlie Sevastos, ERAU Vice President and General Counsel, to Sarah Nilsson, dated 18 Mar 2020 and an additional email received on 25 Mar 2020:

> "The university cannot participate or provide any information to the committee concerning an HR decision affecting an employee."

> "As I mentioned below, the university cannot participate or provide any information to the committee concerning an HR decision, but will review the findings of the committee."

4. **As per Handbook policy Part I, Section 13.3, Paragraph 4, the preceding paragraphs are in full effect** ("If enrollment is insufficient to support the requirements for faculty in a specific program or subject area, the contract may be deactivated, provided sixty calendar days' written notice is given the affected faculty member. In this situation the preceding paragraphs on non-renewal are not operative, and lack of enrollment is the single and STATED reason for the action.")

The non-renewal letter from 21 Jan 2020 <u>does not state</u> that lack of enrollment is a reason for non-renewal. It is also <u>not</u> given as a the <u>single</u> reason for the grievant's non-renewal, which indicates that the previous paragraphs of Handbook policy Part I, Section 13.3 are in full effect.

5. **ERAU did not follow Handbook policy Part I, Section 3.1, Paragraph 3 in defining her status as a full-time instructor at the time of her non-renewal,** which states: "Full-time Faculty are classified as Tenured, Tenure-track, or Non-Tenure Track. Full-time Faculty are entitled to all of the benefits and are responsible for all of the obligations specified in this Handbook."

Throughout the process, there was confusion about the grievant's full-time faculty status. Although her contract, dated 20 Sep 2019, clearly states that she is a "Full-time" and "Non-Tenure Track" faculty, the interim CAO has referred to her as a part-time faculty member. It was based on this circumstance that the previous grievance committee was

advised to stop all proceedings (as part-time faculty do not follow and are not bound by the policies in the Handbook).

6. **ERAU did not follow APPM policy 8.2.9, Staffing Policy:** "This policy applies to all employees at all University locations with the exception of those employees who are issued contracts. Additional information pertaining to staffing actions that affect contract faculty may be found in the respective faculty handbook."

In the case of the grievant, there were violations of the Handbook (outlined above) and in 8, below. The Handbook applies to faculty, who are issued contracts.

7. **ERAU did not follow APPM policy 8.2.10, Reduction in Force Policy:** "Employees classified as instructional personnel, as defined in the Faculty Handbook, shall be subject to those pertinent sections within the established Handbook regarding reductions in instructional staffing and the management of faculty contracts."

As stated above, the procedure for reductions in instructional staffing and the management of faculty contracts from the Handbook was not followed in the case of the grievant.

8. **ERAU did not follow Handbook policy Part I, Section 14 related to the Faculty Grievance Process:** "If a faculty member has a complaint, he/she may elect to present it to her/his immediate supervisor for action through administrative channels. If the faculty member does not obtain a satisfactory resolution of his/her complaint and believes that there has been an alleged misapplication or misinterpretation of this faculty handbook, he/she may file a Formal Grievance as specified below."

On 5 Mar 2020, after a Faculty Senate meeting, the grievant approached the Speaker and the Vice Speaker of the Faculty Senate (Sarah Nilsson and Kaela Martin, respectively) to inform them of her intentions to file a formal grievance. In accordance with provisions in the Handbook, Part I, Section 14.4.A, the interim CAO, Kathy Lustyk, was called into the meeting.

On 15 Mar 2020, the grievant submitted a formal Grievance, in accordance with the Handbook, Part I, Section 14.4.B. The speaker then emailed the Senate to garner a vote for the grievance committee, in accordance with Handbook Part I, Section 14.4.C.

On 18 Mar 2020, the grievance process was stopped by an email from Charlie Sevastos, University VP and Legal Counsel, despite the original grievance committee signing confidentiality agreements and reading the original grievance:

```
"Work on consideration of this employee's concern by the Committee
needs to stop, and the employee must be referred to HR if she would
like to address this matter further."
```

Only after a letter was sent to Charlie Sevastos by the grievant on 21 Mar 2020, was the process allowed to continue (on 25 Mar 2020).

[ CONFIDENTIAL ]    **Formal Grievance Committee Report:** Olga Waesche

## Conclusions

The Committee in this matter firmly believes that Olga Waesche provided abundant, clear, and irrefutable evidence that multiple violations of the ERAU Handbook Policies and Procedures occurred with regards to her contract non-renewal.

In addition to the specific instances of documented Handbook and APPM violations described above, the Committee received compelling evidence of numerous breaches of ethical and professional conduct in the inequitable treatment of the grievant, as it pertains to the non-renewal of her contract. These violations include discrimination on the basis of gender and national origin, failure to recognize her full-time non-tenure track faculty status, among others, causing her irreparable damage to both her reputation at the university, as well as her professional career.

The Committee feels that if the facts stated in this report are ignored and the necessary suggested recommendations are not applied, this would open the door for a recurrence of such violations, which will result in grievances filed by faculty and potential legal action against the University.

As such, it is the strong recommendation of this committee that the non-renewal decision of Olga Waesche's contract be immediately reviewed by the Chancellor. The Formal Grievance Committee believes there were blatant and sufficient violations of procedure, with clear evidence, that it supports the Chancellor if she elects to change the recommendation to not renew Olga Waesche's contract, effectively reinstating her as a full-time, non-tenure track instructor for AY 2020-2021. The Committee also recommends a series of administrative reviews, revisions, and procedural changes, such that a similar situation as that faced by Olga Waesche does not occur to another faculty member in the future.

Signed and Delivered on 2 May 2020 by:

Dr. **Akhan Almagambetov**, Formal Grievance Committee Chair,
Assistant Professor, Electrical Engineering (CESE/COE),
~~on behalf of all members of the Committee.~~
on behalf of the three remaining members of the Committee.

**EXHIBIT 2**

Name of Person Filing: **OLGA I. and JOSEPH C. WAESCHE**
Street Address: **9750 E. SUPERSITION DR.**
City, State, Zip Code: **PRESCOTT VALLEY, AZ 86314**
Telephone Number: **928-925-5068**
[✔] Representing Self (No Attorney), or [  ] Represented by Attorney
If Attorney, Bar Number: _____

SUPERIOR COURT
YAVAPAI COUNTY, ARIZONA

2021 JAN 12  PM 1: 55

DONNA McQUALITY, CLERK

BY:   **C. HANCE**

## IN THE SUPERIOR COURT OF ARIZONA
## IN AND FOR THE COUNTY OF YAVAPAI

Case Number: P  1300CV 202100025

**OLGA I. WAESCHE and JOSEPH C. WAESCHE**
Plaintiff

vs

**EMBRY-RIDDLE AERONAUTICAL UNIVERSITY**
Defendant

**CERTIFICATE OF
COMPULSORY ARBITRATION**

[  ]  **CONTROVERTING**

The undersigned certifies that the largest award sought by the Complainant(s), including punitive damages, but excluding interest, attorney's fees and costs,

[✔]  **EXCEEDS** the $ 65,000.00 limit set by Yavapai County Local Rule 10.3.  This case **IS NOT SUBJECT** to the Uniform Rules of Procedure for Arbitration.

[  ]  **DOES NOT EXCEED** the $65,000.00 limit set by Yavapai County Local Rule 10.3.  This case **IS SUBJECT** to the Uniform Rules of Procedure for Arbitration.

**RESPECTFULLY SUBMITTED** this _12th_ day of _January_, 20_20_.

_____
Plaintiff/~~Defendant~~

The Superior Court of Arizona in Yavapai County          Page 1 of 1          COCAf
October 2012

**EXHIBIT 3**

1  Joshua Woodard (Bar #015592)
   jwoodard@swlaw.com
2  Audrey E. Chastain (Bar #033998)
   achastain@swlaw.com
3  SNELL & WILMER L.L.P.
   One Arizona Center
4  400 E. Van Buren
   Phoenix, AZ  85004-2202
5  Telephone: (602) 382-6000
   Facsimile: (602) 382-6070
6
7  *Attorneys for Defendants*

8
                **IN THE SUPERIOR COURT FOR THE STATE OF ARIZONA**
9
                    **IN AND FOR THE COUNTY OF YAVAPAI**
10

11 | In re the Matter of: | No. P1300CV202100025 |

12 OLGA I. WAESCHE and JOSEPH C.
   WAESCHE, husband and wife,

13                Plaintiffs,                    **NOTICE OF FILING NOTICE OF
                                                 REMOVAL**
14         v.

15 EMBRY-RIDDLE AERONAUTICAL                     (Assigned to the Hon. David Mackey)
   UNIVERSITY, INC., a foreign corporation,
16 John Does I-X and Jane Does I-X and
   Corporations I-X,
17
                Defendants.
18

19

20 To the Clerk of the Court and Plaintiffs Olga I. Waesche and Joseph C. Waesche:

21         PLEASE TAKE NOTICE that on February 3, 2021, a copy of the Notice of

22 Removal, attached hereto as **Exhibit A**, was filed with the Clerk of the United States District

23 Court for the District of Arizona.

24

25

26

27

28

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

DATED: February 3, 2021

SNELL & WILMER L.L.P.


By: /s/ Joshua Woodard
     Joshua Woodard
     Audrey E. Chastain
     One Arizona Center
     400 E. Van Buren
     Phoenix, AZ  85004-2202
     *Attorneys for Defendants*

The foregoing was eFiled via TurboCourt
and mailed on February 3, 2021 to :

Joseph C. Waesche
Olga I. Waesche
9750 E. Superstition Dr.
Prescott Valley, Arizona 86314
joeartlaw@gmail.com
*Pro per*


/s/ Leslie Boone

4839-1878-2426

*Snell & Wilmer*
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000