**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Olga I Waesche, | No. CV-21-08020-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Embry-Riddle Aeronautical University Incorporated, | |
| Defendant. | |

Pending before the Court are the parties' cross-motions for summary judgment, which are fully briefed (Docs. 70, 75, 77, 78, 79, 82).[1] For the following reasons, the Court grants Defendant Embry-Riddle Aeronautical University's ("ERAU") motion in part and denies Plaintiff Olga I. Waesche's motion.

**I.     Background**

In 2016, Waesche accepted an Adjunct faculty contract at ERAU to teach Russian Language. (Doc. 35 at 2–4, Doc. 37 at 2.) From Fall 2016 until Spring 2019, Waesche continued in her employment at ERAU as an adjunct faculty member. (*Id.*) Several weeks into the Fall 2019 semester, one of two adjunct Russian language instructors abruptly resigned from ERAU. (Doc. 77-1 at 9–10.) As a result, ERAU had to reassign classes to Waesche, increasing Waesche's course load. (*Id.*)

---

[1] ERAU's request for oral argument is denied because the issues are adequately briefed, and oral argument will not assist the Court in reaching its decision. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

To accommodate the increased course load, ERAU promoted Waesche to the rank of full-time, non-tenured Instructor for the remainder of the 2019–20 school year. (*Id.* at 10–11.) Waesche and ERAU signed a Faculty Contract for the full-time Instructor position for the period of September 26, 2019, to May 15, 2020. (Doc. 70-3 at 2.) That contract provides "[t]his contract is subject to existing [ERAU] policies." (*Id.*)

ERAU's 2019 Handbook states "[t]his document sets forth all the [ERAU] policies and procedures pertaining to the rights, responsibilities, duties, honors, and privileges, of the Faculty of [ERAU]. It supersedes all previous ERAU faculty handbooks." (*Id.* at 5.) It also includes the following relevant provisions:

> The term "non-renewal" means that [ERAU] has decided not to renew an annual contract at the conclusion of the stated annual contract period. The final decision not to renew an annual contract is made by the President; such a decision may not be improperly discriminatory, arbitrary, or capricious. In cases where a faculty member believes that the non-renewal of his or her contract has been improperly discriminatory, arbitrary, or capricious, the faculty member may commence a grievance in accordance with the established procedures for grievance. . . .
>
> The President shall act on a recommendation for non-renewal only after the annual performance evaluation process has been completed and after having received the recommendation from the Campus Chief Academic Officer. . . .
>
> Notice of [ERAU's] intention not to renew an annual contract of a faculty member will be furnished in writing on or before March 1. Since a notice of non-renewal is not a dismissal for cause, it is not necessary for [ERAU] to set forth reasons in the notice of non-renewal.
>
> All annual contracts are contingent upon enrollment. . . .

(*Id.* at 14–15.)

On January 24, 2020, ERAU's Human Resource Department ("HR") prepared a letter to Waesche regarding the non-renewal of her full-time Instructor position. (Doc. 77-1 at 51–52.) Sara L. Heffelfinger, Director of HR, informed Brandon Young, Vice President of ERAU and Chief of HR, that she left the signature on the non-renewal letter blank until Young could hear direction from ERAU's President, Dr. Butler. (*Id.*)

On February 7, 2020, Waesche's supervisor, Jon C. Haass, emailed ERAU's

Chancellor, Annette Karlsson, recommending renewal of Waesche's contract, despite Waesche being "currently slated for non-renewal." (Doc. 77-3 at 21.) Haass provided a detailed financial case to "support the investment in the continued use of . . .Waesche." (*Id.*) That same day, Chancellor Karlsson responded to Haass, "[u]nfortunately, enrollment is too low for us to continue to support a full-time faculty/instructor. There are other programs that have much higher enrollment and are even more understaffed." (*Id.*)

After that exchange on February 7, 2020, ERAU's HR Department provided Waesche with a letter of non-renewal of her Instructor contract for the 2020–21 academic year. (Doc. 77-2 at 6.) The letter was dated January 21, 2020, and Young's signature was at the bottom of the letter. (*Id.*) On February 25, 2020, Waesche received a favorable annual faculty evaluation from her supervisor. (*Id.* at 2–4.) The evaluation recommended renewal of Waesche's faculty contract for the 2020–21 academic year. (*Id.*)

On March 15, 2020, Waesche submitted a grievance of her non-renewal, arguing that "ERAU misapplies the policies and procedures regarding the non-renewal of my annual Faculty Contract . . . and its action was improperly arbitrary or capricious and maybe, evidence may show, it was discriminatory." (Doc. 70-3 at 21–25.) On March 18, 2020, Sara Nilsson, a member of the Faculty Grievance Committee, shared an email with the committee from Charlie Sevastos, ERAU's General Counsel. (*Id.* at 27.) In the email, Sevastos stated,

> A faculty non-renewal is not subject to review by a grievance committee. The university cannot participate or provide any information to the committee concerning an HR decision affecting an employee. Work on consideration of this employee's concern by the Committee needs to stop, and the employee must be referred to HR if she would like to address this matter further.

(*Id.*) On March 21, 2020, Waesche wrote to Sevastos, directing his attention to ERAU's 2019 Handbook and inquiring why he halted her grievance process. (Doc. 70-4 at 2–3.) On March 24, 2020, Sevastos emailed Waesche stating that he would ask the grievance committee to review her evidence and that "the university will not provide any input into the committee but will review [the committee's] recommendation." (*Id.* at 5.)

On April 1, 2020, after requesting and reviewing additional information from Waesche regarding the nature of her grievance, the Faculty Grievance Committee met and found no evidence that Waesche's non-renewal was improperly discriminatory, arbitrary, or capricious. (Doc. 77-2 at 25–27.) The committee stated:

> The Faculty Handbook is clear on non-renewal procedure but this was not followed in [Waesche's] case. . . . In [Waesche's] case the reverse happened and her non-renewal letter from Brandon Young was written on January 21, 2020, whereas her evaluation (which was exemplary) was done after on February 26, 2020. We find, however, no evidence indicating that her non-renewal decision was improperly discriminatory, arbitrary, or capricious. We understand the decisions for renewal are based upon needs in the department, as well as budgetary constraints.

(*Id.* at 26.)

On April 16, 2020, Waesche emailed Nilsson, stating that she disagreed with the committee's finding and requesting that a Formal Grievance Committee be created pursuant to ERAU Handbook. (Doc. 70-5 at 1–2.) A Formal Grievance Committee, consisting of five faculty members, was created. (*Id.* at 5–8.) However, before the Formal Grievance Committee could meet and issue its findings, two of its five members resigned. (*Id.*) On May 4, 2020, ERAU's Vice Chancellor emailed Chancellor Karlsson regarding the resignation of two of the Formal Grievance Committee's members. (Doc. 70-6 at 2.) In her email, the Vice Chancellor stated, "Interesting. I hope this is b/c the remaining 3 had a change of heart and realized that the aim of hurting [ERAU] is not an appropriate role of the g. committee." (*Id.*)

The remaining three members of the Formal Grievance Committee submitted their findings to Chancellor Karlsson. (Doc. 77-3 at 2–3.) Among other things, the Formal Committee found that ERAU did not follow the 2019 Handbook because: (1) the non-renewal letter was signed by Young, the Vice President, rather than Butler, the President, and (2) the non-renewal letter was issued prior to Waesche's annual faculty evaluation. (*Id.* at 4–9.) The Committee recommended the Chancellor render the prior non-renewal letter void and extend Waesche's full-time status for the 2020–21 academic year. (*Id.*)

- 4 -

On May 11, 2020, Chancellor Karlsson wrote to Waesche, stating "I have received the report from the Faculty Grievance Committee . . . . After reviewing the report, I have concluded that no further actions will be taken regarding your termination." (*Id.* at 31.)

On July 16, 2020, Waesche filed a charge of discrimination with the Arizona Civil Rights Division. (Doc. 75-3 at 24.) On August 27, 2020, Young, on behalf of ERAU, responded to the Office of the Attorney General regarding Waesche's discrimination charge. (Doc. 70-6 at 4–6.) In his response, Young stated "Waesche did file a grievance which was her right under the faculty handbook. The response received [from the committee] . . . stated that 'the faculty grievance committee[] did not see any evidence that her non-renewal decision was improperly discriminatory.'" (*Id.*)

Waesche commenced this action on January 12, 2021. Waesche alleges the following causes of action: (1) breach of contract; (2) breach of implied covenant of good faith and fair dealing; (3) employment discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 1000e-2(a), 1000e-6(a); and (4) negligent misrepresentation. (Doc. 35.) Waesche now moves for partial summary judgment on claims one and two. ERAU moves for summary judgment on all of Waesche's claims against it.

**II.    Standard**

When parties submit cross-motions for summary judgment, the Court must consider each motion on its own merits. *Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court will grant summary judgment when, viewing the facts in a light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party based on the competing evidence. *Id.*

Summary judgment may also be entered "against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In such a situation, the party seeking summary judgment bears the initial burden of informing the Court of the "basis for its motion, and identifying those portions of the [record] which it believes demonstrates the absence of a genuine issue of material fact." *Id.* at 323 (citations and internal quotations omitted). The burden then shifts to the non-movant to establish the existence of a genuine dispute of material fact. *Id.* at 324. The non-movant may not simply rest upon the allegations of her pleadings. Rather, the non-movant must point to "specific facts showing that there is a genuine issue for trial." *Id.* at 324. Furthermore, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (internal quotation and citation omitted).

**III.  Analysis**

**A.  Claim One: Breach of Contract**

For a breach of contract claim, "the plaintiff has the burden of proving the existence of a contract, breach of contract, and resulting damages." *Chartone, Inc. v. Bernini*, 80 P.3d 1103, 1111 (Ariz. Ct. App. 2004). Because the question of damages resolves Waesche's claim, the Court discusses only that part of her burden. "The damages which may be recovered in a contract action are those proximately caused by the breach or within the contemplation of the parties to the contract." *Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab'ys*, 423 P.2d 124, 126 (Ariz. 1967). The burden is on Waesche to "show the amount of [her] damages with reasonable certainty." *Gilmore v. Cohen*, 386 P.2d 81, 82 (Ariz. 1963); *see also S. Ariz. Sch. For Boys, Inc. v. Chery*, 580 P.2d 738, 741 (Ariz. Ct. App. 1978) ("The well-established rule in Arizona is that the damages for breach of contract are those which *arise naturally from the breach itself* or which may reasonably be supposed to have been within the contemplation of the parties at the time they entered the

contract.") (emphasis added).

Waesche argues that because ERAU breached its contract by issuing a non-renewal prior to her faculty evaluation, she suffered damages in the form of loss of full-time income and benefits from August 2020 to present. (Doc. 70 at 11–12.) ERAU counters that Waesche's damages do not arise from the breach. ERAU explains that its non-renewal decision was based on financial considerations and enrollment numbers, not Waesche's performance evaluation. Thus, even if the faculty evaluation had been completed prior to the non-renewal, the result—non-renewal of Waesche's Instructor contract—would have been the same. (Doc. 77 at 9–11.)

The Court finds that Waesche's contract claim fails as a matter of law because she cannot establish that she suffered damages as a proximate result of ERAU's alleged breach. It is uncontroverted that Waesche's contract could have been non-renewed even if she had received her faculty evaluation prior to the renewal decision. ERAU's 2019 Faculty Handbook states that the "final decision not to renew an annual contract is made by the President." (Doc. 70-3 at 14–15.) It also provides that the "President shall act on a recommendation for non-renewal only after the annual performance evaluation has been completed and after having received the recommendation from the Campus Chief Academic Officer." (*Id.*) Although the Handbook outlines the process the President must follow upon *receiving a recommendation for non-renewal*, it neither touches on nor limits the President's non-renewal power in any other situation. Moreover, the Handbook clarifies that all annual contracts are "contingent upon enrollment." (*Id.*) Thus, so long as the decision is not arbitrary, capricious, or discriminatory, ERAU could non-renew a contract even if an employee received a stellar performance evaluation and the Chief Academic Officer recommended renewal. Waesche does not dispute this.

In fact, Waesche admits in her brief that "[ERAU] didn't need a reason to non-renew [her] contract." (Doc. 79 at 9.) And in her deposition, when asked if the decisionmakers at ERAU would have changed their minds on renewal had they received the faculty evaluation, Waesche responded "I think it's speculative." (Doc. 75-1 at 50–51.) A jury

cannot rule in favor of Waesche based on speculation, and Waesche proffers no specific evidence demonstrating that her contract would have been renewed had ERAU followed the contractual order of operations. As a result, ERAU is entitled to summary judgment on this claim. *See Jimenez v. Maricopa Unified Sch. Dist. No. 20*, No. 2:07-cv-2558-HRH, 2009 WL 10673605, at *13 (D. Ariz. Sept. 15, 2009) (holding that plaintiffs failed to establish that breach of contract caused damages because "[p]laintiffs also could have been nonrenewed even if they had received evaluations that complied with Board policy").

### B. Claim Two: Breach of the Implied Covenant of Good Faith and Fair Dealing

Arizona law implies a covenant of good faith and fair dealing in every contract. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986).

> [T]he implied-in-law covenant of good faith and fair dealing protects the right of the parties to an agreement to receive the benefits of the agreement they have entered into. The denial of a party's right to those benefits, whatever they are, will breach the duty of good faith implicit in the contract. Thus, the relevant inquiry always will focus on the contract itself, to determine what the parties did agree to.

*Wagenseller v. Scottsdale Mem'l Hosp.*, 710 P.2d 1025, 1040 (Ariz. 1985), superseded by statute on other grounds. Contract damages are generally available for breach of the covenant and are part of the plaintiff's *prima facie* case. *United Dairymen of Arizona v. Schugg*, 128 P.3d 756, 760–62 (Ariz. Ct. App. 2006). A plaintiff seeking contract damages must prove them "with reasonable certainty." *Gilmore*, 386 P.2d at 82; *see also Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1113 (Ariz. Ct. App. 2004).

Waesche asserts seven ways in which ERAU allegedly breached its duty of good faith and fair dealing: (1) ERAU failed to comply with its 2019 Handbook because the final decision of non-renewal allegedly was neither made by ERAU's President nor made after Waesche's faculty evaluation had been completed; (2) ERAU's General Counsel briefly halted Waesche's grievance process; (3) the Faculty Grievance Committee's Report did not show that the Committee attempted to investigate, mediate, and resolve the grievance, as was required by ERAU's 2019 Handbook; (4) ERAU's August 2020 position statement

in response to Waesche's EEOC charge focused on the fact that the Faculty Grievance Committee did not find her non-renewal improperly discriminatory, arbitrary, or capricious; (5) ERAU's Chancellor sent a letter to Waesche on May 11, 2020, which stated that Chancellor Karlsson would not take further action on Plaintiff's termination but failed to mention that ERAU had received the findings of the Formal Grievance Committee; (6) ERAU's Vice Chancellor sent an email to Chancellor Karlsson, vocalizing concern that members of the Formal Grievance Committee had the goal of hurting ERAU; and (7) ERAU's non-renewal letter was dated January 21, 2020, but was given to Waesche in February 2020, and cited an outdated Handbook. (Doc. 70 at 13–15.)

The Court finds that all seven bases fail to establish a *prima facie* case of breach of the implied covenant of good faith and fair dealing because Waesche has pointed to no specific evidence in the record connecting these seven alleged breaches to actual damages she sustained. In Waesche's motion for summary judgment, she asserts that her damages under her breach of good faith and fair dealing claim would be the same damages she asserted under her breach of contract claim—the loss of full-time employment income with benefits from August 2020 to present. (Doc. 70 at 15.) Yet, just as she failed to do in her contract claim, Waesche fails to show how any of ERAU's alleged breaches of good faith and fair dealing proximately caused her contractual damages. Nor does she point to any specific contractual benefit denied to her. No "rational or reasonable jury" could return a verdict that but-for any of ERAU's alleged seven breaches of good faith and fair dealing, Waesche's contract would have been renewed. *See Jimenez*, 2009 WL 10673605, at *9. Without evidence of actual damage, Waesche fails to establish a *prima facie* claim for breach of the covenant of good faith and fair dealing. ERAU is entitled to summary judgment.

**C. Claim Three: Title VII Discrimination**

ERAU moves for summary judgment on claim three, which alleges that ERAU violated Title VII of the Civil Rights Act of 1964 by discriminating against Waesche because of her sex and national origin. ERAU makes two arguments: (1) the Court lacks

subject-matter jurisdiction over Waesche's sex discrimination claim because Waesche failed to exhaust the administrative prerequisites and (2) even if Waesche's sex discrimination claim is not barred on jurisdictional grounds, Waesche fails to satisfy the applicable standards for either a sex or national origin discrimination claim. The Court addresses each argument in turn.

### 1. Exhaustion of Sex Discrimination Claim

Before a plaintiff can bring a Title VII claim in court, she must first exhaust her administrative remedies. *B.K.B. v. Maui Police Dep't*, 276 F.3d 1091, 1099 (9th Cir. 2002). Under Title VII, a plaintiff must timely file a charge with the EEOC, or appropriate state agency, thereby affording the agency an opportunity to investigate the charge. 42 U.S.C. § 2000e-5(b). "The administrative charge requirement serves the important purpose of giving the charged party notice of the claim 'and narrow[ing] the issues for prompt adjudication and decision'" *B.K.B.*, 276 F.3d at 1099 (quoting *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995)). "Incidents of discrimination not included in an EEOC charge may not be considered by a federal court." *Green v. Los Angeles Cnty. Superintendent of Sch.*, 883 F.2d 1472, 1475 (9th Cir. 1989). Courts "construe the language of EEOC charges with utmost liberality since they are made by those unschooled in the technicalities of formal pleading." *B.K.*, 276 F.3d at 1099 (internal quotations and citation omitted). However, "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." *Adams v. Ariz. Senate*, No. cv-17-00822-PHX-DLR, 2019 WL 13032293, at *5 (D. Ariz. Feb. 7, 2019) (quoting *Duncan v. Delta Consol. Indus., Inc.*, 371 F.3d 1010, 1015 (8th Cir. 2004)).

In her EEOC charge, Waesche only marked the "National Origin" box as the basis for discrimination. (Doc. 75-3 at 24). She left "Sex" unmarked. (*Id.*) In her Discrimination Statement, Waesche stated, "I believe Respondent discriminated against me because of my national origin, Russian." (*Id.*) In describing the particulars of her claim, Waesche stated, "In or around the end of April 2020, I was excluded from a staff meeting. I believe I was

excluded due to my national origin. . . . I believe and therefore allege that Respondent discriminated against me because of my national origin, Russian." (*Id.*) Nowhere in her EEOC charge does Waesche allege that ERAU discriminated against her based on her sex or gender. Waesche's only mention of "gender" was that in March 2020, the "[Formal Grievance] Committee conducted an investigation and found evidence of gender and national origin discrimination." (*Id.*) This singular stray remark is insufficient to meet the exhaustion of administrative remedies requirement under Title VII. Waesche's EEOC charge contained no claims or factual allegations that could reasonably be expected upon investigation to lead to a sex discrimination claim. Waesche's sex discrimination claim is not properly before this Court and, thus, ERAU is entitled to summary judgment.

### 2. *Prima Facie* Case of National Origin Discrimination

The *McDonnell Douglas* burden-shifting framework governs Title VII discrimination claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, the plaintiff bears the initial burden of demonstrating a *prima facie* case of discrimination. *Lowe v. City of Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985). "The requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). If the plaintiff makes this threshold showing, "[t]he burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Id.* at 1123–24. If the employer does so, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason is pretextual, "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affs v. Burdine*, 450 U.S. 248, 256 (1981).

Under *McDonnell Douglas*, the plaintiff establishes a *prima facie* case of discrimination if she shows: (1) she belongs to a protected class; (2) she was qualified for

the position; (3) she suffered an adverse employment action; and (4) she was treated less favorably than other similarly situated employees outside her protected class. *McDonnell Douglas*, 411 U.S. at 802; *Adams*, 2019 WL 13032293, at *6. There is no dispute that Waesche is a member of a protected class, is qualified for her job, and suffered an adverse employment action.[2] Rather, ERAU argues that Waesche has not shown that she was treated less favorably than similarly situated employees outside her protected class. The Court agrees.

Waesche asserts that the faculty contracts of individuals teaching Spanish, Arabic, and Chinese were renewed, whereas her contract was not. (Doc. 79 at 13.) This, however, is insufficient to meet the fourth prong of the *McDonnell Douglas* framework. Waesche offers no evidence that these employees are not Russian and therefore fall outside her protected class; instead, she seemingly invites the Court to assume that anyone teaching Spanish, Arabic, or Chinese must not be Russian, an assumption neither the Court nor a jury could reasonably make. Nor does Waesche proffer evidence that these employees' contracts were renewed in the Spring of 2020. At most, Waesche points to ERAU's admissions regarding student enrollment numbers and faculty positions for each respective foreign language course offered at ERAU leading up to the Spring of 2020. (Doc. 79-1 at 4–6.) Yet, this still fails to meet the required showing that similarly situated individuals outside of Waesche's protected class were treated more favorably. Though the requisite degree of proof to establish a *prima facie* case of discrimination on summary judgment is minimal, it is not negligible. Waesche fails to meet her burden and ERAU is entitled to summary judgment on this claim.

### D. Claim Four: Negligent Misrepresentation

ERAU contends that the Court should dismiss Waesche's negligent misrepresentation claim because "Arizona's workers' compensation scheme is the

---

[2] Under Title VII, a plaintiff can demonstrate a *prima facie* case of discrimination *either* by pointing to direct of evidence of discriminatory intent, or by showing that the four requirements set forth in *McDonnell Douglas* are met. *Lowe*, 775 F.2d at 1005. Although ERAU addresses both avenues, Waesche only argues the four-prong *McDonnell Douglas* framework. (*See* Doc. 79 at 13.) For this reason, the Court begins its analysis here.

- 12 -

exclusive remedy for negligence claims by employees against employers" and therefore the Court lacks subject-matter jurisdiction over the claim. (Doc. 75 at 17; *see also* Doc. 82 at 16–17.) The Court disagrees.

Arizona's workers' compensation statutes provide that "[e]very employee coming within the provisions of this chapter who is *injured*, and the dependents of every such employee who is killed *by accident arising out of and in the course of employment* . . . shall be entitled to receive and shall be paid such compensation for loss sustained on account of the injury or death." A.R.S. § 23-101 (emphasis added). The right to recover compensation pursuant to the workers' compensation scheme for "injuries sustained by an employee or for the death of an employee is the exclusive remedy against the employer." A.R.S. § 23-1022. The Industrial Commission of Arizona is charged with the adjudication of such claims. A.R.S. § 23-921. Although the statutes do not define the term "injury," the Arizona Supreme Court has "long held that an accidental injury occurs 'when usual exertion leads to something actually breaking or letting go with an obvious sudden *organic or structural change in the body*.'" *Polanco v. Indus. Comm'n of Ariz.*, 154 P.3d 391, 394 (Ariz. Ct. App. 2007) (quoting *Phelps Dodge Corp. v. Cabarga*, 285 P.2d 605, 608 (Ariz. 1955)) (emphasis added). "The definition of 'accidental injury,' however, necessarily encompasses the definition of 'injury.' Moreover, Arizona's definition is consistent with those found in treatises and adopted in other jurisdictions." *Id.* (citing 3 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* ch. 55, at 55-1 (2006) ("[p]ersonal injury" is a "harmful change in the body")).

Thus, contrary to ERAU's argument, Arizona's workers' compensation scheme does not contemplate *all* negligence actions by an employee against their employer. Rather, "the underlying principle of the compensation system is a trade of tort rights for an expeditious, no-fault method by which an employee can receive compensation for *accidental injuries sustained in work-related accidents*." *Stoecker v. Brush Wellman Inc.*, 984 P.2d 534, 537 (Ariz. 1999) (emphasis added). "When an injury falls within the scope of the compensation, the legislature may abrogate the right for action for tort recovery by

a worker who elected to accept compensation." *Id.* at 537. But any "[c]laims that do not fall within the scope of the workers' compensation statute are not barred by its exclusivity provision." *Id.*; *see e.g.*, *Mendoza v. McDonald's Corp*, 213 P.3d 288, 298 (Ariz. Ct. App. 2009) ("[B]ad faith claim constituted a completely independent tort cause of action and was, thus, not within the purview of the [workers' compensation] exclusivity provision.").

Here, Waesche's negligent misrepresentation claim is a claim for pecuniary—not bodily—injuries. The claim is unrelated to any work-related accident or physical injury. Thus, it falls outside the scope of Arizona's workers' compensation scheme. Because the claim is properly before the Court, and because ERAU makes no alternative arguments for summary judgment, ERAU's motion is denied as to this claim.

**IT IS ORDERED** that Waesche's motion for partial summary judgment (Doc. 70) is **DENIED**.

**IT IS FURTHER ORDERED** that ERAU's motion for summary judgment (Doc. 75) is **GRANTED IN PART** as follows:

- ERAU is entitled to summary judgment on claim one (breach of contract), claim two (breach of the implied covenant of good faith and fair dealing), and claim three (Title VII Sex and National Origin discrimination).
- Claim four (negligent misrepresentation) may proceed to trial.

**IT IS FURTHER ORDERED** that the parties shall appear for telephonic trial scheduling conference on **October 26, 2023, at 10:00 a.m**. Call-in instructions will be provided via separate email.

Dated this 29th day of September, 2023.

Douglas L. Rayes
United States District Judge